UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHANDLER FOZARD, Individually and on Behalf of Those Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| ANDRE BROWN, Individually and on Behalf of Those Similarly Situated, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-1334-B |
| C.R. ENGLAND, INC. d/b/a PREMIER TRUCK DRIVING SCHOOL, | § § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**[1]

Before the Court is Defendant C.R. England, Inc. d/b/a Premier Truck Driving School's Motion to Compel Arbitration and Alternative Motion to Transfer Venue. Doc. 10. For the reasons that follow, the Court **GRANTS** Defendant's Motion to Compel Arbitration, and **DENIES without prejudice** Defendant's Motion to Transfer Venue.

**I.**

**BACKGROUND**

This is a Fair Labor Standards Act (FLSA) case where Plaintiffs allege Defendant failed to: (1) pay them overtime in violation of the FLSA; and (2) pay for "off-the-clock" work in violation of Texas's wage statute. Doc. 1, Pls.' Orig. Compl. ¶ 1. Plaintiffs Chandler Fozard and Andre Brown

---

[1] The irregular caption of the case reflects the consolidation of four separate cases brought between Plaintiffs Chandler Fozard and Andre Brown.

enrolled in Defendant's Truck Driving School to gain the training and experience necessary to obtain a commercial driver's license before becoming an employee of Defendant. Doc. 10, Def.'s Mot. to Compel 2. Before beginning classes, they signed a Driver Education and Employment Contract and a Mutual Arbitration Agreement (MAA). *Id.* Plaintiffs later became employed as employee-driver trainees for Defendant. *Id.* at 4.

This case was consolidated from four separate cases in October 2016. Doc. 14, Order Consolidating Cases. Prior to consolidation, Fozard and Brown brought nearly identical suits against Defendant in both state court and federal court. Their state court suits were both removed, so all four suits ended up in federal court. Before consolidation, Defendant filed its Motion to Compel Arbitration—the Motion before the Court today—in each of the four suits. As a result of consolidation, only one of the four Motions is before the Court, and because it was originally filed in the case brought by Fozard, it fails to address Brown. Because this deficiency is due to the consolidation, the Court will consider Defendant's Motion as applying to both Plaintiffs and will consider Plaintiff Fozard's Response as coming from both Plaintiffs.

In August 2016 Defendant filed a Motion to Compel Arbitration or in the alternative, a Motion to Transfer Venue to the District of Utah (Doc. 10). Plaintiffs filed a Response (Doc. 13), and Defendant filed a Reply (Doc. 15). Therefore, the Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

In enacting the Federal Arbitration Act (FAA), "Congress . . . expressed a strong policy favoring arbitration before litigation." *J.S & H. Constr. Co. v. Richmond Cty Hosp. Auth.*, 473 F.2d 212, 214–15 (5th Cir. 1973). Under the FAA, "[a] written provision in any . . . contract evidencing

a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further authorizes a United States district court to enforce valid arbitration agreements if one of the parties to the agreement petitions it to do so. *Id.* § 4.

The Fifth Circuit follows a two-step procedure in deciding whether to compel arbitration: (1) determine "whether the parties agreed to arbitrate the dispute in question"; and (2) determine whether any external legal constraints foreclose arbitration of the dispute. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (per curiam). A court, "[i]n determining the contractual validity of an arbitration agreement, [applies] ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

In conducting the first step of the analysis—whether the parties agreed to arbitrate the dispute in question—a court will find an agreement where: (1) there exists between the parties "a valid agreement to arbitrate"; and (2) the "dispute in question falls within the scope of that arbitration agreement." *Id.* Ordinarily, the second question is one for the Court, but where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

When there is a possible delegation clause, the Court first performs the usual analysis of contract formation. Then the only remaining question is "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should

be granted in almost all cases." *Id.* at 202.

## III.

## ANALYSIS

Defendant moves the Court to enter an order that: (1) compels arbitration of the claims, (2) enforces the class or collective action waiver in the parties' MAA, and (3) stays the litigation. Doc. 10, Def.'s Mot. to Compel 12. In the alternative, Defendant requests that the Court transfer the lawsuit to the District Court for Utah based on the mandatory forum selection clause in another contract. *Id.* Plaintiffs respond that Defendant's Motion should be denied because Defendant has failed to establish that Utah state law, and not Texas law, governs the issue of contract formation. Doc. 13, Pls.' Resp. 2. Plaintiffs also argue that Defendant waived its right to enforce an agreement to arbitrate because it substantially invoked litigation as a means of adjudicating the present dispute. *Id.* With regard to Defendant's alternative argument, Plaintiffs argue that the forum selection clause is invalid and unenforceable. *Id.* at 3.

A.  *Whether to Compel Arbitration of the Claims*

As discussed above, the Court must determine whether the parties agreed to arbitrate the dispute at issue by considering whether (1) the parties have a valid agreement to arbitrate, and (2) the dispute falls within the scope of the agreement. *See Webb*, 89 F.3d at 258. If the answer to both of those questions is yes, then the Court must consider whether any external legal constraints foreclose arbitration. *See id.*

1.  <u>Whether a Valid Agreement to Arbitrate Exists between the Parties</u>

A court, "[i]n determining the contractual validity of an arbitration agreement, [applies] ordinary state-law principles that govern the formation of contracts." *Carter*, 362 F.3d at 301. In

applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

The parties disagree over which state's contract law applies. Defendant argues that Utah state law applies because the MAA indicates that its construction and interpretation should be governed and construed under the FAA and laws of the State of Utah. Doc. 15, Pl.'s Reply 2 (citing Doc. 11, MAA, Ex. A). Plaintiffs, on the other hand, argue that Texas state law should apply because the agreement was provided to Plaintiffs in Texas, the terms of the contract were memorialized in Texas, and any performance under the contract was done in Texas. Doc. 13, Pls.' Resp. 3. In reply, Defendant notes that Plaintiff failed to point out how an analysis under Texas law would achieve a different result and argues that while Utah law should apply, it does not matter because both Utah and Texas law would lead to the same result of finding the contract to require arbitration. Doc. 15, Def.'s Reply 2–3.

The Court agrees with Defendant. And the Court need not resolve the question of whether Utah law or Texas law applies because, even assuming that Texas law governs the arbitrability question, the same result follows. *See Webb*, 89 F.3d at 258 (deciding to leave unresolved the question of which state's laws applied because regardless of which law applied, the plaintiff's arguments concerning the validity of the agreement were without merit).

In Texas, a valid contract requires an "offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (citing *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ); *McCulley Fine Arts Gallery, Inc. v. "X"*

*Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ)). Under Utah law, "[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Trans-Western Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1177 (10th Cir. 2016) (quoting *Aquagen Int'l, Inc. v. Calrae Tr.,* 972 P.2d 411, 413 (Utah 1998)).

While disputing which law to apply, Plaintiffs do not appear to dispute the formation of a contract between the parties. In arguing that Texas law should apply, Plaintiffs note that "the agreement was provided to Plaintiff in Texas and the terms of the contract were memorialized in Texas. Furthermore, any performance . . . or duty contemplated under the contract was done in Texas." Doc. 13, Pls.' Resp. 3. Plaintiffs also fail to indicate how Texas law would compel a different result, especially because Plaintiffs do not dispute the formation of a contract. Therefore, as there is no dispute as to the formation of a valid contract, and the elements of both Texas and Utah law are met, the Court concludes that the MAA constitutes a valid agreement to arbitrate between Plaintiffs and Defendant.

### 2. Whether the Dispute in Question Falls within the Scope of the Agreement

As discussed above, the question of whether an arbitration agreement covers the claims at issue is ordinarily a question for the Court, but where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Kubala*, 830 F.3d at 202 (citing *First Options of Chi., Inc.*, 514 U.S. at 942). When there is a possible delegation clause, the Court first performs the usual analysis of contract formation, as the Court did above. Then the only remaining question is "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration

should be granted in almost all cases." *Id.* at 202.

Here, there is a dispute over the presence of a valid delegation clause. Plaintiffs argue that the issue of arbitrability of certain claims is a question for the Court because Defendant[2] has not sufficiently asserted the supremacy of any delegation clause. Doc. 13, Pls.' Resp. 4. Defendant responds by pointing to the MAA and its express delegation of authority to the arbitrator to decide questions of arbitrability. Doc. 15, Def.'s Reply 7 (citing Doc. 11, MAA, Ex. A).

In *Rent-A-Center*, the Supreme Court held the following was a valid delegation clause: "The Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, [or] enforceability . . . of this Agreement." 561 U.S. at 66, 72. Here, the language of the MAA provides that:

> Covered Claims shall include any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the parties relating to the scope of the arbitrator's powers, the interpretation or enforceability of this Agreement or any part thereof, or the arbitrability of any dispute.

Doc. 11, MAA, Ex. A.

Similar to the delegation clause in *Rent-A-Center*, the MAA provides that the arbitrator has the authority to resolve disputes regarding the interpretation, scope, and enforceability of the MAA. Further, the MAA expressly states that the arbitrator has the authority to determine the arbitrability of any dispute. Doc. 11, MAA, Ex. A. It follows that the clause in this case is a valid and enforceable delegation clause. *See Kubala*, 830 F.3d at 204 (finding the delegation clause valid and enforceable after comparing it to the clause in *Rent-A-Ctr.* and finding the two "strikingly similar"). The

---

[2] Plaintiffs' Response actually states that "the *Plaintiff* has not sufficiently asserted the supremacy of any delegation clause." Doc. 13, Pls.' Resp. 4 (emphasis added). The Court, however, reads it as alleging that Defendant has failed to point out a valid delegation clause given the context of the argument.

arbitrator, and not the Court,[3] then, should decide whether a given claim is arbitrable. *See id.* Therefore, absent any external legal constraints foreclosing arbitration, the motion to compel arbitration should be granted. *See Kubala*, 830 F.3d at 202.

### 3. Whether External Legal Constraints Foreclose Arbitration

Having determined both that Plaintiffs and Defendant entered into a valid arbitration agreement and there is a valid delegation clause, the Court now addresses whether there are any external legal constraints that would nonetheless preclude arbitration. *See Webb*, 89 F.3d at 258. "The party resisting arbitration must demonstrate that Congress clearly intended to preclude the parties from waiving their judicial remedies or that another ground exists at law or equity (such as fraud or coercion) which permits the parties' contract or agreement to be revoked." *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 936 (S.D. Tex. 2008) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

Plaintiffs argue that Defendant's Motion should be denied because any arbitration clause was waived by Defendant substantially invoking the judicial process to the detriment of the other party. Doc. 13, Pls.' Resp. 3–4. Plaintiffs reason that the following actions constitute substantially invoking the judicial process: (1) removing a related case; (2) answering the present case and asserting that Plaintiffs failed to state a claim upon which relief could be granted; (3) answering and affirming that this Court maintains subject matter jurisdiction and that venue is proper; (4) participating in the Court's Rule 26(f) conference; and (5) answering discovery. *Id.* at 4.

In its Reply, Defendant rejects each example given by Plaintiffs and cites to authority that

---

[3] Even if the Court were the correct decision maker, it appears that Plaintiffs' claims would nonetheless be covered by the MAA's scope as the MAA indicates that FLSA claims and other claims for unpaid wages are subject to mandatory arbitration. *See* Doc. 11, MAA, Ex. A.

deems each of the listed acts as not substantial enough to waive arbitration. Doc. 15, Def.'s Reply 3–6. Defendant also distinguishes each of the cases cited by Plaintiffs. *Id.* at 6. Finally, Defendant notes that Plaintiffs failed to argue that any of Defendant's behavior caused them detriment or prejudice. *Id.* at 7. Defendant continues that arbitration is appropriate because the Fifth Circuit has determined that FLSA claims are subject to arbitration and Texas courts have determined that statutory claims are subject to arbitration so long as the arbitration agreement does not waive the substantive rights afforded by the statute.[4] Doc. 10, Def.'s Mot. to Compel 5.

Regarding Plaintiffs' waiver argument, the Fifth Circuit has determined that "a party waives its right to arbitrate if it (1) 'substantially invokes the judicial process' and (2) thereby causes 'detriment or prejudice' to the other party." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)). But "in light of the federal policy favoring arbitration, '[t]here is a strong presumption against finding a waiver of arbitration.'" *Id.* at 421–22 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).

Before considering the list of actions that Plaintiffs argue constitute substantial invocation of the judicial process, the Court first considers the second element—detriment or prejudice caused to the other party. *See Al Rushaid*, 757 F.3d at 421. Defendant is correct that Plaintiffs failed to give

---

[4] As discussed above, the arbitrability of claims is a question for the arbitrator because of the presence of a valid delegation clause in the MAA. If it had been a question for the Court, however, it appears that FLSA claims and the relevant Texas statutory claims are subject to arbitration as Defendant argues. *See Carter*, 362 F.3d at 298 (finding arbitration of FLSA claims does not deprive a party of substantive rights under the statute, even if that party is unable to proceed collectively); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423–24 (Tex. 2010) (noting that Texas courts have held that statutory claims under the Texas Workers' Compensation Act are arbitrable as an arbitration agreement covering statutory claims is valid so long as the agreement does not waive substantive rights and remedies of the statute) (citing *Poly–America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008)).

a single example of how Defendant's actions caused them detriment or prejudice. Therefore, the Court finds that Plaintiffs' waiver argument fails. *See Brendel v. Meyrowitz*, 3:15-cv-1928-D, 2016 WL 302282, at *10 (N.D. Tex. Jan. 25, 2016) (finding in the alternative that even if a defendant had substantially invoked the judicial process, the plaintiff made no attempt to show how he suffered unfair prejudice).

Yet even if Plaintiffs had given an example about how they were prejudiced, the Court has reviewed the cases cited by Defendant and concludes that Defendant's actions did not rise to the level of substantially invoking the judicial process. For those reasons, and with the strong presumption in favor of arbitration, the Court concludes that Defendant did not waive its right to have the dispute arbitrated.

B.   *Whether the Collective/Class Action Waiver Applies*

The Fifth Circuit has rejected the argument that the "inability to proceed collectively deprives [plaintiffs] of substantive rights available under the FLSA." *Carter*, 362 F.3d at 298. "And the Supreme Court and other courts have recently enforced arbitration clauses that expressly contain waivers on proceeding collectively [and as a class] (both in court and in the arbitral forum)." *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2013) (citing *Am. Express Co. v. Italian Colors Rest.*, — U.S. —, 133 S.Ct. 2304, 2310 (2013); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991); *In re Online Travel Co.*, 953 F. Supp. 2d at 721–22).

Defendant argues that the MAA's provision titled "Class Action/Collective Action/And Other Group Proceeding Waivers" waives Plaintiffs' ability to bring their claims as a class or

collective action.[5] Doc. 10, Def.'s Mot. to Compel 6. The MAA provides that "[a]ll Covered Claims under this Agreement shall be submitted and arbitrated on an individual basis only. The Parties expressly waive any right to submit, initiate, or participate in any class, collective, consolidated, representative or joint action." Doc. 11, MAA, Ex. A. Plaintiffs do not address and therefore do not dispute Defendant's waiver argument. Because the Supreme Court has enforced class and collective action waivers and because Plaintiffs do not dispute the clause's enforceability, the Court finds that Plaintiffs are barred from bringing their claims as a class or collective action.

C.      *Motion to Transfer Venue to District of Utah*

As an alternative to the Court granting its Motion to Compel Arbitration, Defendant moved the Court to transfer the case to the District of Utah. Doc. 10, Def.'s Mot. to Compel 7. Because the Court grants Defendant's Motion to Compel Arbitration, it need not consider Defendant's alternative Motion to Transfer Venue or Plaintiffs' arguments against it. Therefore, the Court **DENIES** Defendant's Motion to Transfer Venue.

**IV.**

**CONCLUSION**

For the forgoing reasons the Court **GRANTS** Defendant's Motion to Compel Arbitration (Doc. 10). Therefore, the Court **ORDERS** that the parties arbitrate their dispute as required by the MAA. The case is **STAYED**, and the Clerk of Court is instructed to administratively close this case pending arbitration. The Parties are **ORDERED** to provide joint status reports regarding arbitration

---

[5] While the presence of a valid delegation clause precludes the Court from determining questions of arbitrability, the MAA expressly provides that any dispute regarding the meaning, interpretation or enforceability of Paragraph 5, the Class Action/Collective Action Wavier, is not subject to arbitration. Doc. 11, MAA, Ex. A. Therefore, Defendant's argument over this Paragraph is a question for the Court to decide.

every 90 days, with the first report due on **June 15, 2017**.

    SO ORDERED.

    SIGNED: March 17, 2017.

                                                                    _____
                                                                      JANE J. BOYLE
                                                                      UNITED STATES DISTRICT JUDGE